UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA EUGENIA ATENCIO MACHADO,<br><br>Petitioner,<br><br>v.<br><br>DIRECTOR OF THE OTAY MESA DETENTION CENTER, et al.,<br><br>Respondents. | Case No.: 25-cv-3277-JES-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241;** and<br>**(2) DENYING AS MOOT PETITIONER'S MOTION FOR EXPEDITED REVIEW**<br><br>**[ECF No. 1]** |

    Before the Court is Petitioner Maria Eugenia Atencio Machado's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Pursuant to the Court's Order to Show Cause, Respondents (the "Government") filed a Response. ECF No. 6, ("Res."). The Court then took the matter under submission. On January 16, 2026, Petitioner filed a Motion for Expedited Review ("Motion"). ECF No. 7.  For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **DENIES AS MOOT** Petitioner's Motion.

## I. BACKGROUND

Petitioner, a Venezuelan citizen, attempted to enter the United States but was detained upon arrival, on December 7, 2023, Pet. ¶ 1. That same day, Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner under Section 240 of the Immigration and Naturalization Act ("INA"). Res. at 1; ECF No. 6-1; *see* 8 U.S.C. § 1229a. DHS then released Petitioner "on her own recognizance." Res. at 1. Soon thereafter, Petitioner asserted claims for asylum and under the Convention Against Torture ("CAT"). Res. at 1; 8 U.S.C. §§ 1158, 1231(b)(3).

Immigration Court has since held that Petitioner is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Res. at 1. On October 9, 2025, an Immigration Judge ("IJ") denied Petitioner's asylum and CAT claims and ordered her removed to Venezuela. *Id.* at 1-2; ECF No. 6-2, ("IJ Ord."), at 1. Then on October 17, 2025, when Petitioner voluntarily attended an Immigration and Customs Enforcement ("ICE") appointment, she was arrested and re-detained. Pet. ¶ 3; Res. at 1-2. On October 20, 2025, Petitioner filed a timely appeal of the IJ's decision to the Board of Immigration Appeals ("BIA"). Pet. ¶ 4; Res. at 2. Accordingly, Petitioner's asylum and CAT claim proceedings remain pending and, therefore, a final order of removal has not yet been issued. Pet. ¶ 4; Res. at 2. Petitioner is currently housed in the Otay Mesa Detention Center, subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Pet. at 1.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections

have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### III. DISCUSSION

Petitioner contends that Respondents' revocation of her parole and the application of 8 U.S.C. § ("Section") 1225(b) to govern her detention violates the Fifth and Eight Amendments of the U.S. Constitution. Pet. at 1; U.S. Const. amends. V, VIII. She, therefore, seeks habeas relief, requesting that the Court order her immediate release or, in the alternative, a bond determination hearing by an IJ. Pet. at 1. In their Response, Respondents raise two main arguments. First, Petitioner's claim is jurisdictionally barred by Section 1252. Res. at 7-15. Alternatively, if not barred, is not yet ripe as Petitioner has failed to exhaust her available administrative remedies. *Id*. Second, Petitioner is lawfully detained under Section 1225. *Id*. Thus, the Court should deny the Petition. *Id*.

The Court finds that Respondents' arguments regarding these issues appear to be identical to those raised in the Court's recent decision in *Martinez Lopez v. Noem*. *Martinez Lopez v. Noem*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2 (S.D. Cal. Oct. 30, 2025). Therefore, the Court elects to follow its reasoning in *Martinez Lopez* and incorporates it by reference. 2025 WL 3030457, at *2; *see also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding the same).

//

### A. Jurisdiction

The threshold question for the Court is whether it has jurisdiction to hear this Petition. In this action, Petitioner challenges the propriety of her detention—specifically, Respondents' application of Section 1225(b)(2) to govern it—not the merits of her removal, asylum or CAT claim proceedings. The Court, therefore, finds that Section 1252's jurisdiction stripping provisions do not bar this Court from considering this Petition.

The Court also finds that the prudential administrative exhaustion requirement for habeas claims, under Section 2241, is excused. Imposing this requirement would be futile due to the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N 216 (BIA 2025) (holding that Section 1225(b)(2) governs the detention of noncitizens, such as Petitioner). Thus, the Court finds that it has jurisdiction to hear the Petition.

### B. Petitioner's Detention under Section 1225

This court, along with many others, have overwhelmingly held that Section § 1225 does not apply to detentions that occur after the petitioner has resided in the United States for a period of time. *See Martinez Lopez*, 2025 WL 3030457, at *4-5 (explaining reasoning and citing cases); *Beltran*, 2025 WL 3078837, at *4-7 (finding same).

Specifically, courts have applied this reasoning to situations just like Petitioner's. There is no dispute that on December 7, 2023, Petitioner was paroled into the United States, on her own recognizance, and has lived in the United States since that date, before she was re-detained. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (holding that Section 1226 applies to petitioner who was paroled into the country on her own recognizance in June 2024 and re-detained in August 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025) (holding that Section 1226 applies to petitioner who was released at border on own recognizance in October 2021 and re-detained in July 2025).

Accordingly, the Court holds that Section 1225 does not apply to Petitioner's detention.

//

### C. Procedural Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679.

Petitioner argues that the revocation of her parole violates procedural due process because since being released from immigration custody, she: (1) has complied with all immigration and ICE check-in requirements,; (2) does not pose a danger to the community, has no criminal record, and is not a flight risk; and (3) was not given any notice, nor an opportunity to be heard, prior to her parole being revoked and prior to her being re-detained. Pet. ¶¶ 2-7. The Government's Response focuses entirely on jurisdiction and which statute governs Petitioner's detention. *See generally* Res. It fails entirely to address whether Petitioner acquired a protected liberty interest, in remaining out of immigration custody, or if its conduct deprived her of such an interest, without due process of law. *Id*.

This issue was recently addressed by the undersigned in *Gergawi v. Larose*. No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *3-4 (S.D. Cal. Dec. 23, 2025). Therefore, the Court adopts its prior reasoning and incorporates it by reference. The Court, thus, finds that: (1) Respondents released Petitioner on conditional parole, pursuant to Section 1226(a)(2)(B); (2) this resulted in Petitioner's acquisition of a protected liberty interest in remaining out of immigration custody; and (3) when the Government revoked Petitioner's conditional parole—without notification, reasoning, or an opportunity to be heard— it violated Petitioner's due process rights. Accordingly, the Court will grant the Petition and order Petitioner's immediate release.

#### 1. Petitioner was Released on Conditional Parole

Section 1226 provides that during the pendency of a noncitizen's removal proceedings, they "will either be detained" or "allowed to reside in this country," through the grant of bond or conditional parole. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

103, 108 (2020); *see* 8 U.S.C. §§ 1226(a)(1)-(2). When a noncitizen is first apprehended, an ICE officer makes an initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022), A noncitizen can only be released if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

Turing to this Petition's facts, Respondents detained Petitioner on December 7, 2023, and immediately released her "on her own recognizance." Res. at 1. The Court makes three observations that, to it, connotes that Respondents released Petitioner on conditional parole, pursuant to Section 1226(a)(2)(B).

First, Section 1225 provides that when DHS inspects "an applicant for admission" and determines that they are not entitled to be admitted, the only available option to release them into the country is under Section 1182(d)(5)(A). *Savane v. Francis*, 801 F. Supp. 3d 483 (S.D. N.Y. 2025); 8 U.S.C. § 1182(d)(5)(A) (providing DHS discretionary authority to grant noncitizens parole into the United States for "urgent humanitarian reasons"). Petitioner's DHS Notice to Appear indicates that she is not an "arriving alien" but rather "an alien present in the United States who has not been admitted or paroled … after an inspection by an Immigration Officer." ECF No. 6-1. Petitioner, therefore, could not be released under Section 1182(d)(5)(A) because she does not meet Section 1225's definition of "an applicant for admission." *See* 8 U.S.C. §§ 1225(a)(1), (b)(2)(A); *see* ECF No. 6-1. Further, the notice also indicates that DHS did not issue a positive credible fear determination to Petitioner. ECF No. 6-1. Therefore, Petitioner's release could not be based on "urgent humanitarian reasons." 8 U.S.C. § 1182(d)(5)(A). Thus, Petitioner was not released under Section 1182(d)(5)(A).

Second, Petitioner asserts that she "voluntarily complied with all immigration and ICE check-in requirements." Meaning that Petitioner's release was conditioned on terms set by DHS. Pet. ¶ 2. Third, while the parties' filings are void of any mention of a bond, however, the Government states that Petitioner was released "on her own recognizance."

Res. at 1.; Pet. ¶ 2; *see* 8 U.S.C. § 1226(a)(2)(B); *see also Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were ... released on their own recognizance pursuant to DHS' conditional parole authority under ... 8 U.S.C. § 1226(a)(2)(B)[.]"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Thus, the Court finds that when Petitioner was released from immigration custody, she was granted conditional parole, pursuant to 8 U.S.C. § 1226(a)(2)(B).

### 2.     Petitioner Acquired a Constitutionally Protected Liberty Interest

To prevail on a "procedural due process claim," one must establish "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. This protection provides that even when an individual has had substantial constraints imposed on their liberty, they still retain a protected interest in their liberty. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019). In fact, an individual, whose liberty the Government may exercise its seemingly unfettered discretion over, also retains such an interest. *Id.*; *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding same with respect to parolee's protected liberty interest); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing). Even when the initial custody determination is solely within the government's discretion, its decision to release an individual from custody creates "an implicit promise." *Morrissey*, 408 U.S. at 482. A promise that an individual reasonably relies on "that [their] parole will be revoked only if [they] fail[] to live up to the parole conditions." *Id*. Accordingly, "the liberty [of a person

//

released from immigration custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Id.*

When Petitioner was initially detained, the decision to detain or release her, for the pendency of her removal proceedings, was entirely within the Government's discretion. *See* 8 U.S.C. § 1226(a). In its discretion, the Government chose to release Petitioner. Res. at 1. In doing so, the Government made Petitioner an "implicit promise," upon which she reasonably relied on—that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *See Morrissey*, 408 U.S. at 482.

Thus, the Court finds that Petitioner acquired a constitutionally protected liberty interest in remaining out of immigration custody, which vested when Respondents released her on conditional parole, on December 7, 2023. *See Pinchi v. Noem*, 792 F. Supp.3d 1025, 1032 (N.D. Cal July 24, 2025).

### 3. Petitioner's Re-detention Violates Due Process

"Once it is determined that due process applies, the question remains what process is due." *Morrissey*, 408 U.S. at 481. "The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* [being] deprived of any significant protected interest." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (quoting *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985) (internal quotations omitted).

To determine constitutionally sufficient procedures to protect a liberty interest, courts apply the *Mathews* test. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This test requires courts to balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id*.

//

      The Court finds that the *Mathews* factors weigh in favor of it holding that the Government's revocation of Petitioner's conditional parole—without first providing notice, its reasoning, or an opportunity to be heard—violated her due process rights.

      First, Petitioner has a significant liberty interest in remaining out of custody, which she obtained through the Government's grant of conditional parole. *See Zadvydas*, 533 U.S. at 690. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention ... is the carefully limited exception."); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (2022) ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

      A liberty interest, such as Petitioner's, is paramount and, should therefore, be protected. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." (citation and internal quotation marks omitted)). Especially when Petitioner claims that she has followed all the conditions of parole and there are no allegations, let alone evidence, to the contrary. *Id.*; *see* Pet. ¶ 2; *see also generally* Res. Thus, the Court finds that Petitioner has a substantial private interest in maintaining her conditional parole, out of immigration custody.

      Second, the risk of an erroneous deprivation of such an interest is high. Respondents revoked Petitioner's parole without providing her a reason for revocation, but most importantly, without an opportunity for her to be heard. Pet. ¶ 14. This resulted in neither party having an opportunity to determine whether there was any valid basis for her re-detention. *Pinchi*, 792 F. Supp. 3d at 1035. Needless to say, the Government's provision of such an opportunity, would have prevented the Government's clear error.

      A noncitizen's bond or parole that was granted under Section 1226(a), may be revoked at any time. 8 U.S.C. § 1226(b). After revocation, the noncitizen may be re-arrested under the original warrant, and re-detained. *Id.* However, after revoking bond or

parole, DHS may not re-arrest a noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (finding that a showing of change circumstance is needed to re-arrest noncitizen ordered released by IJ); *see also Salcedo*, 2025 WL 2637503, at *1 (finding that Government's practice is to require a showing of changed circumstances prior to re-arrest of noncitizen that was ordered released by a DHS officer).

The Court can infer that when Petitioner was granted conditional release, she did not pose a danger to the community and was not a flight risk because release may only be granted upon DHS making such a finding. *See* 8 C.F.R. § 236.1(c)(8); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017). Since being released, Petitioner contends that she has maintained strong family and community ties in the United States, and is therefore, not a flight risk. Pet. ¶ 6. She contends further that she has not committed any crimes while in this country, thus, she is still not a danger to the community. *Id*. Respondents have failed to address Petitioner's due process arguments nor state any facts that would constitute Petitioner being a danger to the community—and the Court, therefore, finds that changed circumstances do not exist which show that at this time Petitioner is a danger to the community or a flight risk. *See generally* Res.

The Court does, however, identify circumstances that have changed which may justify Petitioner's re-arrest. On October 9, 2025, an IJ denied Petitioner's asylum and CAT claims, and ordered her removed to Venezuela. *See* IJ Ord. at 1-3. Had Petitioner waived her right to appeal or failed to file an appeal by November 10, 2025, Petitioner's order of removal would be deemed administratively final. *See Garcia v. Lynch*, 786 F.3d 789, 798 (9th Cir. 2015). The occurrence of either event would constitute changed circumstances that authorize Respondents to re-arrest Petitioner to effectuate her removal. *See* 8 U.S.C. § 1231

However, Petitioner did not waive her right and filed a timely appeal. IJ Ord. at 9; ECF No. 6-3. Therefore, when Respondents rearrested Petitioner on October 17, 2025, they did so in the absence of any changed circumstances that could justify their conduct. A pre-

determination hearing would have easily clarified that revocation of Petitioner's parole, based on the IJ's decision, was premature and unlawful. Accordingly, the Court finds that, here, the risk of an erroneous deprivation of liberty is high.

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1038-39; *see also Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *Alvarenga Matute v. Wofford*, --- F. Supp. 3d. ----, 2025 WL 2817795, *6 (E.D. Cal. 2025). The Government fail to point to any burden it if had provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Res.

Accordingly, the Court joins its numerous sister courts in finding that Petitioner's detention is unlawful because when the Government re-detained her, it revoked her conditional release in violation of the Due Process Clause. *See Gergawi*, 2025 WL 3719321, at *3-4; *Pinchi*, 792 F.Supp.3d at 1038 (holding same); *Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Sanchez v. LaRose,* No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

### D.     Eighth Amendment Claim and Motion for Expedited Review

Having granted the Petition, on the merits, the Court declines to address Petitioner's Eighth Amendment claim. On January 16, 2026, Petitioner filed a Motion for Expedited Review ("Motion"). ECF No. 7. In light of the Court's ruling on the Petitioner, it **DENIES AS MOOT** the Motion.

### IV.     CONCLUSION

For the reasons discussed above:

(1) The Court **GRANTS** Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2241;

(2) Because the Court **GRANTS** the Petition and concludes that Respondents' revocation of Petitioner's conditional parole violates procedural due process, Respondents are **ORDERED** to **IMMEDIATELY** release Petitioner from custody, subject to any conditions of her preexisting conditional parole;

(3) The Court **DENIES AS MOOT** Petitioner's Motion for Expedited Review;

(4) The Parties are **ORDERED** to file a Joint Status Report on or before **January 20, 2026**, confirming that Petitioner has been released; and

(5) Upon receipt of the Joint Status Report, the Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 16, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge